**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

CHARLES NILES,

                Plaintiff,

                v.

**1:12-cv-817
(GLS/DJS)**

**PAN AM RAILWAYS, INC.,**

                Defendant.
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:**<br>Caplan & Caplan P.C.<br>1719 Central Avenue<br>Albany, NY 12205 | MURRAY N. CAPLAN, ESQ. |
| **FOR THE DEFENDANT:**<br>Carter, Conboy Law Firm<br>20 Corporate Woods Boulevard<br>Albany, NY 12211 | KATHLEEN MCCAFFREY<br>BAYNES, ESQ.<br>JONATHAN E. HANSEN, ESQ. |

**Gary L. Sharpe
Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Charles Niles commenced this diversity action against defendant Pan Am Railways, Inc. seeking damages for his personal injuries arising from a train accident. (*See generally* Compl., Dkt. No. 1,

Attach. 1.) Pending is Pan Am's motion for summary judgment. (Dkt. No. 54.) For the reasons that follow, Pan Am's motion is granted.

## II. Background

### A. Facts[1]

On March 15, 2009 around 5:45 p.m., Niles was struck by a train after he stumbled and fell onto railroad tracks in Hoosick Falls, New York. (Def.'s Statement of Material Facts (SMF) ¶¶ 1, 8, 11, 43, Dkt No. 54, Attach. 19.) Niles attempted to walk across the tracks between the Center Street and Elm Street crossings to return to a local bar called The Eagles Club where he had previously been drinking. (*Id.* ¶¶ 2, 4, 6; Dkt. No. 54, Attach. 11.)

While traveling through the crossings in Hoosick Falls, Joseph DeBartolomao, the train's engineer, observed a "small black object" between the Center Street and Elm Street crossings. (Def.'s SMF ¶ 26; Pl.'s SMF ¶ 26, Dkt. No. 62, Attach. 3.) DeBartolomao conveyed this information to Steven Carey, the train's conductor, who identified the object to be debris or a trash bag after he stood up from his seat to get a clearer view. (Def.'s SMF ¶¶ 18, 28-29, 31-32.) The crew continued to monitor

---

[1] Unless otherwise noted, the facts are not in dispute.

2

the object and discussed whether it might contain something that may harm the train's engines. (*Id.* ¶¶ 32-33.) As the train came closer, the crew observed that the object was actually a person, and immediately slammed on the emergency brake. (*Id.* ¶¶ 35, 37-38.) However, it was too late, and the train struck Niles before coming to a stop approximately thirty feet past his body. (*Id.* ¶ 39.) Niles was transported to Albany Medical Center where he received treatment for his injuries, which, ultimately, resulted in the amputation of both of his legs. (*Id.* ¶ 45; Dkt. No. 54, Attach. 8 at 42-43.)

After the accident, data was downloaded from the train's event recorder. (Def.'s SMF ¶ 40.) This data revealed that immediately before the collision the train was operating at ten miles per hour, which was the maximum authorized speed to travel through the Village of Hoosick Falls. (*Id.* ¶¶ 22, 40.) Additionally, the data recorded that the emergency brake was applied at 5:45:37 p.m. by the Center Street crossing, 118 feet from where the train stopped. (*Id.* ¶¶ 41, 43.) Finally, the data marked that horns were signaled at each of the three crossings preceding the point where Niles was lying on the tracks. (*Id.* ¶ 42.)

Niles's medical records from Albany Medical Center indicated that he

was "heavily intoxicated" and had a 0.34% blood alcohol level, which was measured over an hour after the accident. (*Id.* ¶¶ 46, 48.) At his psychiatric evaluation, Niles admitted that he is "depressed [and] angry," and "binges on [alcohol] and marijuana to deal with his problems." (*Id.* ¶ 47.) Niles also testified at his deposition that he smoked marijuana on the afternoon of the accident. (*Id.* ¶ 5.)

Carey worked for the railroad for the last nine years as a conductor and traveled that route at least twenty times before the day of the accident. (*Id.* ¶¶ 18, 20.) Pan Am maintains that Carey had good vision and had regular eye examinations in 2009, however, Niles notes that Carey testified to needing a prescription to see distance starting in 2014. (*Id.* ¶ 19; Pl.'s SMF ¶ 19; Dkt. No. 54, Attach. 10 at 37-38.) DeBartolomao had worked for the railroad as train engineer since 2000 and previously worked for other railroads as an engineer since 1979. (Def.'s SMF ¶¶ 13-14.) In 2009, he had good vision and received regular eye examinations. (*Id.* ¶ 15.) He traveled the route through Hoosick Falls at least three hundred times and was unaware of any prior accidents in that area. (*Id.* ¶¶ 16-17.)

The parties dispute what company owned and operated the train as well as employed its crew. Pan Am maintains that Springfield Terminal

Railway, Incorporated employed DeBartolomao and Carey and owned and operated the train, whereas Niles contends that Pan Am was the owner, operator, and employer. (*Id.* ¶¶ 13, 18; Pl.'s SMF ¶¶ 13, 18.) At his deposition, Carey testified that Springfield Terminal Railway and Pan Am were "all the same" and "[t]hey all mean the same thing to [him]." (Pl.'s SMF ¶ 18; Dkt. No. 54, Attach. 10 at 9.) DeBartolomao and Carey testified that they were currently employed by Springfield Terminal Railway, but at the same time served as a conductor and an engineer for Pan Am. (Dkt. No. 54, Attach. 9 at 5, 13-14; Dkt. No. 54, Attach. 10 at 3, 8-9.) Both testified that they receive orders and were trained by Pan Am. (Dkt. No. 54, Attach. 9 at 18-19, 26-27, 37; Dkt. No. 54, Attach. 10 at 9-10.) DeBartolomao also noted that he did not know whether the train masters that he communicated with over the radio on the day of the accident were employed by Springfield Terminal Railway or Pan Am. (Dkt. No. 54, Attach. 9 at 33.) Additionally, DeBartolomao testified that Springfield Terminal Railway and Pan Am shared the same headquarters in North Billerica, Massachusetts, (*id.* at 27-28), which is supported by corporate records filed with New York State, (Dkt. No. 56, Attach. 4 at 11-14). These records also show that David Fink serves as the Chief Executive Officer for

5

both companies. (*Id.*)

B. <u>**Procedural History**</u>

On February 8, 2012, Niles commenced this action in New York State Supreme Court in Rensselaer County. (*See generally* Compl.) Pan Am removed the case to this court invoking diversity jurisdiction under 28 U.S.C. § 1332. (Dkt. No. 1.) In its answer, Pan Am denied allegations that the defendant owned, maintained, and operated the railroad engine. (Dkt. No. 6 ¶¶ 10-13.) However, in one way or another, Pan Am had since represented to the court and Niles that it operated the train and the engineer and the conductor were its employees. (Dkt. No. 56, Attach. 1 ¶¶ 12-16, 19; Dkt. No. 56, Attach. 2 at 6-11, 13, 16-21; Dkt. No. 56, Attach. 3 at 2-6.) Before the depositions of Carey and DeBartolomao, the attorney for Pan Am notified Niles's attorney that the crew members believed they were employed by Springfield Terminal Railway and not Pan Am. (Dkt. No. 56, Attach. 1 ¶ 28.) After the deposition, Niles's attorney contacted the attorney for Pan Am to clarify its position as to who owned or operated the train involved in the accident. (Dkt. No. 56, Attach. 4 at 16-17.) The attorney for Pan Am responded that Pan Am did not own or operate the train or track, consistent with the response in its answer. (*Id.* at 19.)

Further discussions between the parties prompted a court conference held by then-Magistrate Judge Randolph F. Treece to discuss Pan Am's change of position. (Aug. 27, 2015 Text Minute Entry.) The court directed the parties to discuss whether they could enter into a stipulation to add Springfield Terminal Railway as a defendant. (*Id.*) The court noted that if "a stipulation is not feasible, then this matter should proceed to motions in which [p]laintiff may raise the issue of equitable estoppel." (*Id.*) The parties did not enter into the stipulation, and Pan Am filed the now-pending motion for summary judgment. (Dkt. No. 54.)

## III. Standard of Review

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

## IV. Discussion[2]

---

[2] The court construes Niles's "motion for equitable estoppel or leave to amend complaint," (Dkt. No. 56), as an additional response to Pan Am's summary judgment motion. The court has considered Niles's arguments and agrees that Pan Am is estopped from arguing that it is not the proper defendant. Pan Am represented that it was the owner and operator of the train and that it employed the train's engineer and conductor, and Niles relied on that representation to his detriment. *See Triple Cities Corp. Co. v. Maryland Cas. Co.*, 4 N.Y.2d

7

"In order to prove negligence, [a] plaintiff must demonstrate (1) the existence of a legal duty owed to the plaintiff; (2) a breach of that duty; and (3) injury to plaintiff proximately resulting from such a breach."[3] *Bowen v. Nat'l R.R. Passenger Corp.*, 363 F. Supp. 2d 370, 373 (N.D.N.Y. 2005). Pan Am argues that it did not breach any duty owed. (Dkt. No. 54, Attach. 20 at 3-11.) Niles asserts that Pan Am breached its duty because it was foreseeable that a person would be on the tracks and that Pan Am's crew failed to slow or stop the train to confirm that the obstruction on the tracks was not a person. (Dkt. No. 62 at 18-19.)

Indeed, railroads owe a duty of reasonable care to persons on or near its track. *See Fuentes v. Consol. Rail Corp.*, 789 F. Supp. 638, 640 (S.D.N.Y. 1992); *Soto v. N.Y.C. Transit Auth.*, 6 N.Y.3d 487, 493 (2006);. This same duty applies to trespassers. *See* N.Y. R.R. Law § 83 ("No person . . . shall walk upon . . . its . . . tracks, except where the same shall be laid across or along streets or highways, in which case he shall not walk upon the track unless necessary to cross the same."). Although New York

---

443, 448 (1958). This determination, however, is of no moment because Pan Am is not liable on the merits of the negligence claim.

[3] The parties submit, and the court agrees, that New York law governs the substantive claims of this diversity suit.

has long since abandoned its status-based inquiry, "considerations of who plaintiff is and what his purpose is upon the land are factors which, if known, may be included in arriving at what would be reasonable care under the circumstances." *Basso v. Miller*, 40 N.Y.2d 233, 241 (1976). Generally, "[t]he duty owed is . . . to announce the passing of trains to allow trespassers to remove themselves from the [railroad's] right of way." *Bowen*, 363 F. Supp. 2d at 375.

If a railroad has knowledge of a person on the tracks, "a train operator may be found negligent . . . under such other circumstances as to permit him [or her], in the exercise of reasonable care, to stop before striking the person." *Soto*, 6 N.Y.3d at 493 (internal quotation marks and citations omitted). In cases where the railroad is traveling on an open-run and a train engineer sees a person on the tracks, "'he is not bound to stop his train immediately, but has the right to assume that in broad daylight, the person will see and hear the train, heed the danger, and leave the track.'" *Raspente v. Nat'l R.R. Passenger Corp.*, 111 F.3d 239, 242 (2d Cir. 1997) (quoting *Alba v. Long Island R. R.*, 204 A.D.2d 143, 144 (1st Dep't 1994)). Though, "[o]nce it becomes apparent to the engineer that the person on the tracks cannot or will not remove himself from harm's way, the engineer

9

has a duty to make an emergency stop." *Id.*

Niles empathetically asserts that this is not an open-run case because the train was traveling at a low speed through the Village of Hoosick Falls. (Dkt. No. 62 at 5-10, 19.) The outcome of this case, however, does not turn on whether the open-run rule should apply because the crew did not hesitate to pull the emergency brake after it recognized that a person was lying on the tracks. (Def.'s SMF ¶¶ 37-38.) Rather, here, in support of its motion, Pan Am presents evidence that it did not breach its duty of reasonable care. Specifically, Pan Am demonstrates that the train was traveling at a lawful speed and signaled its horn at each crossing, its conductor and engineer recognized at the Center Street crossing that a person was lying on the track between the Center and Elm Street crossings, and, upon observing the person, the crew immediately slammed on the brakes and pulled the emergency brake. (*Id.* ¶¶ 22, 25, 33, 35-38, 41; Dkt. No. 54, Attach. 13.) The train came to a stop 118 feet after the brakes were applied and, at that point, striking Niles was unavoidable. (Def.'s SMF ¶¶ 39, 43.) Accordingly, Pan Am has established as a matter of law that it exercised reasonable care under the circumstances. *See Neenan v. Quinton*, 110 A.D.3d 967, 968-69 (2d Dep't

2013); *Mirjah v. N.Y.C.Transit Auth.*, 48 A.D.3d 764, 764-65 (2d Dep't 2008).

In response, Niles fails to raise a material question of fact. He argues that it was foreseeable that a person may be on or near the tracks and, thus, once the crew observed the object on the track it should have verified that it was not a person by slowing or stopping the train. (Dkt. No. 62 at 18-19.) Besides relying on his expert's unsupported opinion, (Dkt. No. 62, Attach. 2 at 18), and the general rule proscribed by the Northeast Operating Rules Advisory Committee that when in doubt, a railroad should follow the safe course, (Dkt. No. 62 at 19), Niles fails to cite authority mandating this duty. As noted above, a railroad's only duty is to provide reasonable care under the circumstances. *See Soto*, 6 N.Y.3d at 493. Here, the engineer and conductor observed a stationary object on the tracks that they initially identified as a trash bag or debris. (Def.'s SMF ¶¶ 26, 29, 34; Pl.'s SMF ¶ 29.) The crew continued to monitor the obstruction and, once it was apparent that it was a person, they slammed on the brakes and pulled the emergency brake. (Def.'s SMF ¶¶ 33, 35-38.) Based on this conduct, it cannot be said that Pan Am breached its duty of reasonable care under the circumstances. To be sure, Niles does not

11

contest the crew's reaction time after they observed him on the tracks, *see Raspente*, 111 F.3d at 243, nor the distance between himself and the train when the crew observed him on the tracks, *see Sanders v. N.Y.C. Transit Auth.*, 83 A.D.3d 811, 813 (2d Dep't 2011). Accordingly, Pan Am's motion for summary judgment is granted.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Pan Am's motion for summary judgment (Dkt. No. 54) is **GRANTED**; and it is further

**ORDERED** that the Clerk is directed to close the case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 14, 2016
Albany, New York

_/s/ Gary L. Sharpe_
Gary L. Sharpe
U.S. District Judge